UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

_____

PET-AG, INC., a Delaware corporation,

        Plaintiff,

  -against-                               1:22-cv-02047

REEFTEC SYSTEMS, LLC, a Nevada limited
liability company, BRIAN GYSEGEM,
a natural person, and JOHN DOES 1-10,
individually or as corporations/business entities.

        Defendants.
_____

### DEFENDANT BRIAN GYSEGEM'S REPLY TO PLAINTIFF'S OPPOSITION TO GYSEGEM'S MOTION TO DISMISS

The Defendant, BRIAN GYSEGEM ("Defendant" or "Gysegem") hereby replies to Plaintiff's Opposition to his Motion to Dismiss, and, in support, state:

### FACTUAL BACKGROUND

On April 20, 2022, Plaintiff, PET-AG, Inc. ("Pet AG") filed a lawsuit against Defendants, REEFTEC SYSTEMS, LLC, a Nevada limited liability company ("REEFTEC"), and BRIAN GYSEGEM, a natural person ("GYSEGEM") for counts of Trademark Infringement, Unfair Competition, Violation of the Illinois Uniform Deceptive Trade Practices Act; Common Law Trademark; and Tortious Interference with Existing Contracts and Business Relationships. These counts are all based on the claims asserted by Plaintiff that allegedly Reeftec, a corporation that runs an Amazon Store called R T S with only one managing member, Gysegem, is selling counterfeit Pet AG items [DE1, paragraphs 2- 7].

In it's opposition, Pet AG now states that Gysegem can be held liable for the following reasons:

> managing officer of a corporation is personally liable for infringing activities carried out by the corporation, **without regard to piercing the corporate veil,** if the officer personally participates in the salle of allegedly infringing materials or uses the corporation as an instrument to carry out his willful infringement.
>
> Pet-Ag allows Pet-Ag products to be sold to end-user consumers in the United States only by third parties ("Authorized Sellers") who must enter into agreements with Pet-Ag to be able to sell Pet-Ag products.
>
> Both Pet-Ag and consumers are harmed when non-Authorized Sellers resell Pet-Ag products to consumers because unauthorized sellers are not subject to Pet-Ag's quality controls and frequently sell poor quality products that harm Pet-Ag's reputation and may endanger animals' safety.
>
> Defendants are not Authorized Sellers, and consumer reviews of Defendants' Amazon storefront and of Pet-Ag products Defendants have sold show that Defendants are providing poor customer service and have sold numerous products that are damaged, previously used, tampered with, old and spoiled, or of otherwise poor quality.

[DE 17, pages 2 – 4, respectively].

Reeftec sells only genuine Pet AG products sourced from an authorized seller and sells these items on Amazon. Defendants' actions are protected by the First Sale Doctrine. The Complaint filed by the Plaintiff's is a generic complaint they use for each and every entity and member they have sued. This complaint fails to state specific facts as to Gysegem, but rather alleges in generalities. There is nothing in the complaint's examples of sales that have produced poor reviews or the assertions that genuine, high quality products can only be sold by Pet AG that directly reference the Defendants herein. To the contrary, these are reviews that are used in each complaint filed by Pet AG and make absolutely no reference to the Defendants or that they were

2

purchased from Defendants. The examples and the poor reviews included in the complaint also make no reference to Defendants or the Reeftec storefront.

## MEMORANDUM OF LAW

Here, the first-sale doctrine (also sometimes referred to as the "right of first sale" or the "first sale rule") is a legal concept that limits the rights of an intellectual property owner to control resale of products embodying its intellectual property and enables the distribution chain of copyrighted products. The First Sale Doctrine provides that an individual who legally purchases a product (protected by trademark) receives the right to sell, display or otherwise dispose of that particular product, notwithstanding the interests of the intellectual property owner. The first sale doctrine generally allows the resale of products that constitute or contain someone else's intellectual property without the owner's permission, as long as the person lawfully owns the product. To allow otherwise would endanger the free flow of products in the marketplace. Courts continue to hold that the "resale by the first purchaser of the original article under the producer's trademark is neither trademark infringement nor unfair competition." -*Sebastian Intern. v. Longs Drug Stores*, 53 F.3d 1073, 1074-75 (9th Cir. 1995).

Thus, although copyright holders can control initial distribution of their copyrighted work, their right to control distribution ends once the item is sold. The same is true here. Genuine Pet AG products were purchased by Defendant Reeftec.Systems, LLC ("Reeftec") and subsequently sold, affording them the protection under the First Sale Doctrine.

In the instant case, there is no infringement, as Reeftec sells only genuine products purchased from authorized sellers and thus Gysegem cannot be personally liable for any alleged infringement asserted by Plaintiff wherein they allege that Gysegem "personally participates in the sales and uses Reeftec as an instrument to carry out infringement." [DE 17, page 6].

3

This Complaint is not specific to these Defendants. This Complaint does not attach examples of bad reviews of Defendants' storefront sales. This Complaint does not even reference what Reeftec's warranty and quality controls are. Rather, this Complaint deals in generalities and is used in all of Pet AG's cases against all sellers who do not concede to their demands to cease selling genuine products.

Federal Rule of Civil Procedure 8(a) pleading standard does not require detailed factual allegations, "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft* at 678.. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

Also, the cases cited by Plaintiff all contain a fact pattern quite different from the one before this Court. In each of the cases cited by Plaintiff, the infringers knowingly, willfully and deliberately infringed. In each case presented to this Court by the Plaintff, the Defendant's knowingly were selling counterfeit goods, also known as fakes, were stealing people's namesakes to get an advantage on the market, were outright deceitful or were creating shell companies to effectuate their end goals of infringement.

Plaintiff cited to *Am Ass'n of Motorcycle Injury Lawyers, Inc. v. HP3 Law, LLC*, No. 20 C 4866, 2021 U.S. Dist. LEXIS 134899, at *9 (N.D. Ill. July 20, 2021) for the principle that for

4

"an officer to be personally liable for infringing activities of a corporation, it is not necessary that the officer be acting outside the scope of his official duties." However, in the *Am Ass'n of Motorcycle Injury Lawyers, Inc.* case ("AAMIL"), AAMIL provided legal services and AAMIL is an association of law firms across the United States doing business as "Law Tigers." Defendant Piggee is HP3 Law's manager and its sole owner, member, and attorney, and he "is solely responsible for directing the day-to-day operations and activities of HP3 [Law]." In around December 2012, Defendants began using the designation "TIGER LAW" to advertise and provide legal services in the AAMIL membership area encompassing Chicago and then on January 30, 2013, HP3 Law applied to the U.S. Patent and Trademark Office ("USPTO") for registration of "TIGER LAW" as a trademark for "legal services." Piggee signed the trademark application in his capacity as HP3's "Manager," and, the USPTO denied the application, citing the likelihood of consumer confusion between Defendants' proposed TIGER LAW designation and AAMIL's Law Tigers ® registered trademark. Then, on June 12, 2014, HP3 again applied to the USPTO for registration of the TIGER LAW designation, this time for use in connection with "providing legal services in the field of real estate law, corporate law and business transactions law." The USPTO denied that application on the same ground. Although the USPTO admonished Pigee and told him about the confusion his name would cause – he went about using it anyway – he knowingly, willfully and deliberately infringed.

Also, much like our case, the *Am Ass'n of Motorcycle Injury Lawyers, Inc.* case cited by the Plaintiff further stated that settled precedent holds that, "in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction." *Dangler v. Imperial Mach. Co.,* 11 F.2d 945, 947 (7th Cir. 1926). To make this "special showing" at the pleadings stage, and thus

5

provide a basis for holding an officer "jointly [liable] with the company," a plaintiff must allege that the officer "act[ed] willfully and knowingly."

In the context of a patent infringement action, *Dangler* offered three non-exclusive circumstances in which an officer "acts willfully and knowingly": "[1] when [the officer] personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or [2] when [the officer] uses the corporation as an instrument to carry out his own willful and deliberate infringements, or [3] when [the officer] knowingly uses an irresponsible corporation with the purpose of avoiding personal liability." 11 F.2d at 947. "*Dangler* is still the law of the Seventh Circuit and has been applied to trademark ... cases." *Peaceable Planet, Inc. v. Ty, Inc.*, 185 F. Supp. 2d 893, 896-97 (N.D. Ill. 2002) (citing cases).

The *Dangler* case, cited by Plaintiff, also ruled that ordinarily managing officers are not liable for corporation's infringements. In the *Dangler* case, during a certain part of the alleged infringement period the company was bankrupt, to the knowledge of appellants, who as its officers and directors managed its affairs and thus the company was in fact merely a shell, a sham corporation, unable to meet its financial obligations and the appellants lent the Maxim Company large sums of money for the purpose of continuing the infringements, and thereby became parties principal, liable as well as the company for appellees' damages. *Dangler* went on to hold that <u>in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction.</u> *Id.* at 947 (emphasis added). It is when the officer acts willfully and knowingly— that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of

6

avoiding personal liability— that officers are held jointly with the company. None of these scenerios is what occurred here, and thus Plaintiff's reliance on these cases is misplaced.

In each of the subsequent cases cited by the Plaintiff, from jurisdictions such as California, Florida and Michigan, the actions of the Defendants are deceitful and blatant infringements contrary to the agreements they entered into, and they are willfully attempting to deceive consumers. For example, Plaintiff cited to *Comm. For Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996). Here, the Committee for Idaho's High Desert, CIHD, was up against an entity for having a snail listed on the endangered animal list. CIHD's position on these issues is "to encourage limited use of public lands with an emphasis on conservation and preservation of the natural state of the desert ecosystem". A coalition of agriculture and cattle organizations called the Bruneau Valley Coalition then sued to have the snail de-listed. The director of public affairs at the Idaho Farm Bureau was James Yost; Ted Hoffman was president of the Owyhee Cattlemen's Association; and Quey Johns was president of the Owyhee Farm Bureau. All three organizations, which were members of the Bruneau Valley Coalition, had opposed CIHD's positions on the use of public lands. The individual appellants' viewpoints on these issues are "virtually antithetical" to those of CIHD. When CIHD and others moved to intervene in September 1993 in the de-listing suit in order to defend the listing, Yost had a colleague check with the Idaho secretary of state to determine whether the prospective intervenors were corporations in good standing and learned that CIHD had forfeited its charter in 1985. Immediately, the individual appellants formed a new Idaho corporation under the name "Committee for Idaho's High Desert, Inc," also CIHD. Once appellants learned of CIHD's corporate forfeiture they took action and although never previously considered using the name "Committee for Idaho's High Desert" immediately acquired it. The appellant corporation's articles of incorporation were modeled after CIHD's, and the statement of

7

purposes was copied virtually verbatim from CIHD's, with "a few minor, subtle changes where necessary to represent what are distinct differences between [the appellants'] and [CIHD's] environmental philosophies." *Id.* at 1467. The corporation was capitalized with only $120. Yost, Hoffman, and Johns are the appellant corporation's officers, directors, and only members, and the appellant corporation's articles listed its principal place of business as the Boise office of the Idaho Farm Bureau. CIHD learned of its earlier inadvertent forfeiture when the Bruneau Valley Coalition opposed CIHD's intervention in the de-listing suit on the basis of incapacity. When CIHD promptly sought to be reinstated the secretary of state denied reinstatement because the appellant corporation was already registered under the name "Committee for Idaho's High Desert."

In the Florida case cited by Plaintiff's, *Babbitt Elcs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994), Babbitt had an agreement for the sale and purchase of Cobra phones from Dynascan but then Babbit, without telling Dynascan went and ordered the same cobra phones from Hyundai, and the Court held that a corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil. Once again, none of these cases are similar to the facts before this Court.

In the Michigan case cited by Plaintiff, *In re Interstate Agency, Inc.*, 760 F.2d 121, 125 (6th Cir. 1985), an insurance agency and its president, a large shareholder and the personal signatory to agency agreement, totally failed to account properly for insurance premiums collected and both were guilty of defalcation within Bankruptcy Act provision. In this bankruptcy case, the wrongdoing was intentional, and thus such president's debt to insurance corporation, as well as that of the agency to the corporation, the court held was not dischargeable in bankruptcy.

8

Also, Plaintiff cited to the North Carolina case of *Polo Fashions, Inc. v. Craftex, Inc*., 816 F.2d 145, 149 (4th Cir. 1987). In this case, contrary to our fact pattern, the infringement was willful. Defendant, Craftex, Inc., is a manufacturer of knit shirts. Defendant, Bobby O'Neal, is president and principal stockholder of Craftex, and his son, Keith O'Neal, was involved in the sale of Craftex products until 1983 when he became its plant manager. In 1982 and 1983, Craftex manufactured and the O'Neals sold 1,388 dozen knit sport shirts bearing an embroidered emblem substantially identical to the plaintiff's polo player symbol. Here the court held that the district court erroneously exonerated the two O'Neals.

Plaintiff's rely also on the Florida case of *Chanel, Inc. v. Italian Activewear of Fla., Inc.,* 931 F.2d 1472, 1477 (11th Cir. 1991). In this case, President and chief executive officer of corporation selling imported goods was personally liable for trademark infringement resulting from sale of counterfeit trademarked goods where president and chief executive officer knowingly purchased counterfeit goods, advertised goods as trademarked products, and operated a showroom from which goods were sold. The court ruled "[i]f an individual actively and knowingly caused the infringement, he is personally liable." *Id.*

Further, Plaintiff cites several cases in its response to Gysegem's motion to dismiss, cases for the premise that "a corporate officer is personally liable for infringing activity carried out by a corporation without regard to piercing the corporate veil if the officer has personally participated in the sale of infringing materials or otherwise authorized or directed the infringement." [DE 17, page 9]. One such case, Callanetics *Mgmt. Co. v. Pinckney*, No. 13-cv-4359, 2013 U.S. Dist. LEXIS 173749, at *10-11 (N.D. Ill. Dec. 11, 2013), mentioned the seminal case of *Dangler,* 11 F.2d 945, 947 (cited herein) for the proposition that:

9

> in the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation, though committed under their general direction.... It is when the officer acts willfully and knowingly—that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he uses the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability-that officers are held jointly with the company.

The *Callanetics Mgmt.* case also held that Fed.R.Civ.P. 8 pleading requirements demands more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* See the detailed discussion as to Fed.R.Civ.P. 8 above.

Plaintiff's then proffer the Indiana case of *Coach, Inc. v. Chaos of Muncie*, No. 1:11-cv-0505-JMS-DML, 2012 U.S. Dist. LEXIS 35062, at *10-12 (S.D.Ind. Mar. 15, 2012). In this case, Defendant admits that she purchased Coach "knockoff" merchandise from a fairground vendor in the fall of 2010 and sold them on a retail basis. Defendant admits that she knew that she was purchasing Coach "knockoff" merchandise, and did so to sell the same at its Muncie store. Defendant admits that she offered for sale the Coach "knockoff" merchandise to potential customers in her Muncie store and trained everyone on how to sell the knockoffs. The court ruled that she was the active, moving, conscious force behind defendants infringing activities. *Id.*

In conclusion, Plaintiff has failed to specifically allege how Defendant, Brian Gysegem, is personally liable, as the assertions in the complaint fail to meet the standards required by Rule 8 of the Federal Rules of Civil Procedure, nor are there sufficient allegations that Defendant directed or authorized any infringement and therefore, the case against him should be dismissed.

10

WHEREFORE, the Defendant, Brian Gysegem, respectfully requests that the action against him be dismissed and for any and all further relief as this Court deems just and proper.

Dated:  June 30, 2022.
Long Beach, New York

                                        Respectfully Submitted,

By:    *s/ Cory Jay Rosenbaum*
        (electronically signed)
        C.J. Rosenbaum, Esq. *
        Rosenbaum, Famularo & Segall PC
        138A East Park Avenue
        Long Beach, NY 11572
        CJR@AmazonSellersLawyer.com
        212.256.1109 | NYS Bar #2669133

*Admitted to practice in the State of New York, the Southern Dist. of NY; the Eastern Dist. of NY; and the Northern Dist. Of Ill.

1